*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* U. L. WICKER, Minor.

UNPUBLISHED
January 17, 2025
2:00 PM

No. 371168
Wayne Circuit Court
Family Division
LC No. 2022-001916-NA

Before: RIORDAN, P.J., and O'BRIEN and GARRETT, JJ.

PER CURIAM.

In this case involving the termination of parental rights, respondent-mother seeks reversal of the trial court's order denying her motion for relief from judgment and reconsideration.[1] Respondent-mother's arguments on appeal concern the September 2023 order terminating her parental rights to the minor child, ULW, under MCL 712A.19b(3)(a)(*ii*), (b)(*i*), (i), (j), and (k)(*i*). We find no error in the trial court's rulings and we, therefore, affirm.

## I. BACKGROUND AND PROCEEDINGS

In November 2022, city of Birmingham police officers responded to a mental-health call and found respondent-mother going door-to-door with ULW asking for help and a lawyer. Respondent-mother told officers that people were following her and hacking her electronics. She also told police that other officers handcuffed her at a school the day before, a local official was interfering with her public assistance benefits, and that she did not have any power or food in her home. The officers concluded that respondent-mother needed a mental-health evaluation, so they took her and ULW to a hospital.

During a forensic interview, ULW disclosed that he was very cold when police officers found them, he did not go to school, respondent-mother smoked marijuana at home, and that he

---

[1] The trial court entered this order after a dispositional review hearing regarding the rights of the child's father, who was a respondent in the lower court proceedings but is not a party to this appeal.

saw respondent-mother engage in physical fights with a man over marijuana. ULW also stated that he did not have enough food and did not feel safe at home. In December 2022, an employee of petitioner, the Department of Health and Human Services (DHHS), performed a wellness check on ULW and found that he had a black eye and that there was no food or electricity in the house. Children's Protective Services (CPS) workers also saw ULW with a black eye on a previous occasion. Respondent-mother became irate during the wellness check and refused to agree on a safety plan for ULW. For that reason, the DHHS filed a petition to take temporary custody of ULW and the court entered an ex parte order removing the child from respondent-mother's custody.

Thereafter, the DHHS filed an amended petition for permanent custody and termination of respondent-mother's parental rights. Following evidentiary hearings, the court found grounds to exercise jurisdiction over ULW under MCL 712A.2(b)(1) (neglect or refusal to provide proper care) and (2) (unfit home environment). The court also found that there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(a)(*ii*), (b)(*i*), (i), (j), and (k)(*i*), because evidence established that respondent-mother's parental rights to another child were terminated, she caused ULW's black eyes, she did not visit or plan for ULW's care and, instead, abandoned the child. The trial court then held best-interests hearings in August and September 2023 and found that termination of respondent-mother's parental rights was in ULW's best interests. Respondent-mother did not attend most of the proceedings, including the evidentiary and best-interests hearings. But, in March 2024, respondent-mother moved for postjudgment relief and reconsideration of the order terminating her parental rights and argued that she was incarcerated in another state for a year during the proceedings. The court denied her motion, and she now appeals.

## II. TERMINATION AT INITIAL DISPOSITION

Respondent-mother does not challenge the trial court's determination that the DHHS established statutory grounds to terminate her parental rights to ULW, but instead argues that the DHHS failed to make reasonable efforts to reunite her with ULW, and that the trial court erred by terminating her rights at initial disposition. We disagree.

## A. PRESERVATION AND STANDARDS OF REVIEW

To preserve an argument on appeal regarding reasonable efforts toward reunification, the respondent must object to services at the time they are offered. *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 2.[2] Counsel represented respondent-mother throughout the proceedings, but respondent-mother never argued that she was entitled to a case-service plan to reunite with ULW. Rather, respondent-mother's whereabouts were unknown, she had no contact with DHHS workers, and, as discussed, she did not appear at most of the

---

[2] "The Michigan Supreme Court has expressed skepticism about this rule but declined to overturn it. See *In re Hicks/Brown*, 500 Mich 79, 88-89; 893 NW2d 637 (2017)." *In re MJC*, ___ Mich App at ___ n 2; slip op at 2 n 2.

proceedings. Because respondent-mother did not raise an objection, this issue is unpreserved. *Id*. at ___; slip op at 2.

This Court generally reviews a trial court's decision regarding reasonable efforts toward reunification for clear error. *Id*. at ___; slip op at 2. However, "review of unpreserved issues in termination cases is for plain error affecting substantial rights." *Id*. at ___; slip op at 2.[3]

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings. The party asserting plain error bears the burden of persuasion with respect to prejudice. [*Id*. at ___; slip op at 2 (quotation marks and citations omitted).]

## B. DISCUSSION

In its third amended petition, the DHHS sought permanent custody of ULW. The DHHS may petition for termination at initial disposition if it determines that "there is risk of harm, child abuse, or child neglect to the child," and "[t]he parent's rights to another child were terminated . . . and the parent has failed to rectify the conditions that led to the prior termination of parental rights." MCL 722.638(1)(b)(*i*). In this case, evidence showed that ULW had black eyes on two separate occasions under circumstances suggesting child abuse. Further, evidence showed that respondent-mother's parental rights were terminated to another child in 2016, and the trial court concluded that respondent-mother failed to rectify the conditions that led to that termination, which included problems with her mental health that led to neglect. This evidence established that the filing of the petition seeking permanent custody at initial disposition was proper under MCL 722.638(1)(b)(*i*).

Reasonable efforts to reunify the child must be made in all cases unless certain statutory exceptions apply. MCL 712A.19a(2); see also *In re Barber/Espinoza Minors*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369359); slip op at 3, lv pending; *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). One such exception is if "[t]he parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights." MCL 712A.19a(2)(c). Again, respondent-mother's parental rights were terminated to a child in Oakland County because of "serious and chronic neglect or physical or sexual abuse." The DHHS offered respondent-mother services from July 2013 to February 2016 to rectify the conditions that brought the child into care, including a case-service plan requiring respondent-mother to take parenting classes, attend family therapy, attend individual therapy, provide suitable housing, maintain stable employment, and attend parenting

---

[3] "This Court recently clarified that the plain-error rule does not apply to claims of error raised in civil cases. . . . However, this Court specifically excepted termination of parental rights cases from its holding because they 'present different constitutional considerations.' " *In re MJC*, ___ Mich App at ___ n 3; slip op at 2 n 3, citing *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 294 n 3; ___ NW3d ___ (2023).

time. Those efforts were unsuccessful and respondent-mother's parental rights were terminated. When the DHHS took ULW into care, respondent-mother had not rectified the conditions that led to the previous termination, evidence showed that respondent-mother physically abused ULW, she kept ULW in an unsuitable home that lacked food and power, and that she often left ULW alone to fend for himself.

Therefore, under MCL 712A.19a(2)(c), the DHHS was not required to make reasonable efforts to reunite respondent-mother with ULW and respondent-mother has not shown plain error. See *In re Rippy*, 330 Mich App at 358-359.

The trial court proceeded to termination at initial disposition pursuant to MCR 3.977(E), which provides:

> The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if
>
> (1) the original, or amended, petition contains a request for termination;
>
> (2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;
>
> (3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:
>
> (a) are true, and
>
> (b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (*l*), or (m);
>
> (4) termination of parental rights is in the child's best interests.

Respondent-mother does not discuss MCR 3.977(E) in her brief or specifically challenge the trial court's findings and conclusions regarding the statutory grounds for termination.[4] She instead merely asserts that termination was "unjust" without reasonable efforts at reunification. As discussed, reasonable efforts were not required under MCL 712A.19a(2)(c), and respondent does cite any authority to support her assertion that the trial court should not have terminated her

---

[4] Respondent-mother fails to even cite MCL 712A.19b(3)(i) as a ground for termination on appeal, although it was in the termination order. Only one statutory ground need be proven to terminate parental rights, *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011), so her failure to raise any challenge to this ground means she cannot show that petitioner failed to establish a statutory ground for termination.

parental rights. "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position." *Seifeddine v Jaber*, 327 Mich App 514, 519; 934 NW2d 64 (2019). Respondent-mother has established no error in the proceedings or in the trial court's order and, therefore, she is not entitled to relief on this issue.

## III. BEST INTERESTS

Respondent-mother argues that termination of her parental rights was not in ULW's best interests because the trial court should have established a guardianship to allow respondent-mother to complete a case-service plan. We disagree.

## A. STANDARD OF REVIEW

This Court reviews a trial court's determination that termination of parental rights is in a child's best interests for clear error. *In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 3. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at ___; slip op at 3 (quotation marks and citation omitted). The best-interests determination must be supported by a preponderance of the evidence. *Id*. at ___; slip op at 3.

## B. DISCUSSION

Once the petitioner proves a statutory ground for termination, the trial court must also find that termination is in the child's best interests before the court terminates a respondent's parental rights. *Id*. at ___; slip op at 5. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). This applies when termination is sought at initial disposition. MCR 3.977(E)(3)-(4). The focus is on the child rather than the parent when determining best interests. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). The court may consider many factors, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Simpson*, ___ Mich App at ___; slip op at 5. The court may also consider "the likelihood that the child could be returned to the parent's home within the foreseeable future, if at all." *Id*. at ___; slip op at 5 (quotation marks, citation, and brackets omitted). The trial court should consider and weigh all the available evidence to make this determination. *Id*. at ___; slip op at 5.

Under MCL 712A.19a(9)(c), if "initiating termination of parental rights to the child is clearly not in the child's best interests," then the trial court may "appoint a guardian for the child" if "the court determines that it is in the child's best interests." In *In re Rippy*, 330 Mich App at 359, this Court rejected the respondent's argument that a guardianship should have been established because no one petitioned for a guardianship in the trial court, and no evidence showed that the child's caregivers would have agreed to one.

Similarly, in this case, respondent-mother never asked the court to set up a guardianship. She did not communicate with the DHHS and, as discussed, she did not participate in most of the lower court proceedings. At the best-interests hearing, the mother of respondent-mother testified that she did not think a guardianship would provide ULW with the permanence and stability that ULW needed. She based her opinion, in part, on her own experience as a guardian for respondent-mother's other child. There was also no indication that ULW's caregiver would have agreed to a guardianship. Thus, in light of any request for a guardianship, the trial court did not clearly err in failing to consider one when deciding that termination was in ULW's best interests. See *id*.

In its order terminating respondent-mother's parental rights, the trial court set forth its best-interests findings, which included the trauma respondent-mother inflicted on ULW through physical, mental, and emotional abuse, his fear of respondent-mother, and her failure to visit ULW throughout the case or inquire about his wellbeing. From this ruling, it is apparent that the trial court properly focused on ULW and his need for permanency, stability, and finality. *In re Simpson*, ___ Mich App at ___; slip op at 5; *In re Moss*, 301 Mich App at 87.

From the bench, the trial court also noted that ULW expressed fear of respondent-mother and living in her home, and that respondent-mother and ULW lacked a bond. Respondent-mother did not visit ULW after he was taken into care and she failed to attend most of the proceedings. ULW did not ask about respondent-mother, or suggest that he missed her, and he was doing well in his placement. Evidence showed that ULW was less timid, more playful, and he was doing well in school. ULW also attended therapy for trauma and had special services at school. On this record, it was evident that respondent-mother would not provide for ULW's special needs given her neglect and failure to address her own mental-health needs. For these reasons, the trial court did not err when it ruled that termination of respondent-mother's parental rights was clearly in ULW's best interests.

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Kristina Robinson Garrett